**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

BARBARA JEAN WISDOM,            )
                                )
            Plaintiff,          )
                                )
v.                              )    Case No. CIV-17-083-JHP-KEW
                                )
COMMISSIONER OF SOCIAL          )
SECURITY ADMINISTRATION,        )
                                )
            Defendant.          )

### REPORT AND RECOMMENDATION

Plaintiff Barbara Jean Wisdom (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 58 years old at the time of the ALJ's decision. Claimant completed her education through the eleventh grade. Claimant has worked in the past as a service schedule clerk, customer service representative, and bookkeeper.  Claimant alleges an inability to work beginning September 30, 2013 due to limitations resulting from back pain caused by bulging discs and degenerative spine disease, hypertension, and heart problems.

### Procedural History

On October 3, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 24, 2015, Administrative Law Judge ("ALJ") John W. Belcher conducted an administrative hearing in Tulsa, Oklahoma. On July 30, 2015, the ALJ issued an unfavorable decision. On January 4, 2017, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform her past relevant work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in failing to properly analyze her subjective statements, particularly pertaining to pain.

## Credibility Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of coronary artery disease/ischemia, degenerative

4

disc disease, hypertension, and obesity. (Tr. 19). The ALJ concluded that Claimant retained the RFC to perform her past relevant work as a service schedule clerk, customer sales representative, and bookkeeper. (Tr. 27). In the RFC, the ALJ determined Claimant could perform a range of sedentary work. In so doing, the ALJ found Claimant could occasionally lift/carry ten pounds and less than ten pounds frequently with pushing and pulling consistent with lifting and carrying. Claimant could stand and/or walk with normal breaks for a total of about two hours in an eight hour workday no more than 20 to 30 minutes at one time and with with normal breaks for six to eight hours in an eight hour workday. The ALJ determined Claimant could occasionally climb stairs and ramps, but not ladders, ropes, or scaffolds. Claimant could occasionally bend or stoop. (Tr. 21). As a result, the ALJ found Claimant had not been under a disability from September 30, 2013 through the date of the decision. (Tr. 27).

Claimant contends the ALJ improperly and without support discounted her statements of limitation and intensity of pain without following the appropriate analysis. Claimant testified at the hearing that she lives with her boyfriend/fiancé of 13 years. (Tr. 38). She has a driver's license and drives. Claimant stated that she has not worked since September 30, 2013. (Tr. 39). She left school in the eleventh grade and took one college course. (Tr.

40). Claimant smoked cigarettes but quit in 2012 when she discovered she had heart disease. (Tr. 41). Claimant testified as to side effects from her medications including headaches, memory loss, nausea, drowsiness, tiredness, irritability, hair loss, sweats, dizziness, and constipation. (Tr. 45).

She stated that the conditions which prevent her from having full time employment are having to lie down often due to back pain, inability to sit or stand long before having to lie down on a heating pad for 20 to 30 minutes. (Tr. 45). She has to lay down for about six hours or more per day in order to alleviate the burning pain across her lower back. The sharp pains go down her left leg and she has numbness in her right leg. She has a constant dull ache which becomes worse when she has to do things. (Tr. 46).

Claimant testified she can sit for 20 to 30 minutes before getting "fidgety" and needs to get up. Her lower back feels like it has a crushing down feeling and getting up and moving around a bit alleviates the pain. She stated that she can stand for about 20 to 30 minutes and then must sit or lay down. Along with the searing pain in her lower back, Claimant has spasms which causes her whole body to jerk whereupon she must sit in a warm bath, lay down on a heating pad, and take pain medication. (Tr. 47). The spasms are triggered by sitting or standing for too long. She is forced to do laundry several times a week in smaller loads because she does

not want to pick up anything too heavy.

Claimant stated that she walks a mile and a quarter each day for her heart. The pain in her back starts at about a quarter mile and slowly gets worse. By the time she gets home, she must take a pain pill, take a warm Epsom salt bath, and go on the heating pad for 30 minutes. (Tr. 48). She walks around a track. She stops a few times and drinks water while sitting on a bench. In a regular day, Claimant lifts no more than three or four pounds. She estimates that the most she can lift is less than ten pounds. Activities such as kneeling and pulling increase her back pain a lot. She cannot touch her toes. (Tr. 49).

Claimant experiences dizziness and clumsiness with new medication prescribed to her identified by Claimant as gabapentin. She does not sleep well and the medication helps. (Tr. 50). She does not nap during the day. (Tr. 51).

Claimant testified she had memory loss associated with her heart condition. She stated that she had suffered a heart attack and stroke because her carotid arteries were blocked 90% and the arteries to her heart were 100% blocked. She had stents put in place. (Tr. 51-52). She still has one artery to her heart 100% blocked as well as some blockage to her kidney. Claimant states she has erratic blood pressure. (Tr. 52). Her blood pressure shoots up three or four times a week. She then goes through a series of

efforts to stabilize her pressure which takes an hour and a half to two hours. (Tr. 53-54).

Claimant testified that he typical day begins at 6:30 a.m. when she walks for a mile or mile and a quarter with her grandchildren. She comes home and takes a pain pill, takes a warm Epsom salts bath, and lay down for 30 minutes. She then feeds the dog, does light laundry, light housework, laying down three to four times per day. In the evening, she cooks dinner. (Tr. 56-57).

Claimant testified that she has tried physical therapy, acupuncture, water aerobics, and steroid injections in order to alleviate her condition. (Tr. 57).

Claimant stated that she quit her job because of having to get up and down and her lack of concentration. Her back hurt, she required a heating pad and pillow at work, she could not concentrate because of her back pain, her blood pressure was out of control and required monitoring, she was distressed and irritable. She knew she was not doing her job. (Tr. 58).

The ALJ accurately recited his responsibility to evaluate Claimant's credibility, including the factors to be considered under Soc. Sec. R. 96-7p. He also set out Claimant's testimony on her abilities in light of her conditions. (Tr. 22-23). The ALJ recited the medical evidence and reached the following conclusion on Claimant's credibility:

> I do not discount all of the claimant's complaints. In view of her coronary artery disease, insomnia, degenerative disc disease, hypertension, and obesity, she would undoubtedly have some difficulties. However, the medical evidence reveals numerous physical examinations mainly within normal limits. Gait has remained normal. Pain medication provided relief. Average intelligence was assessed. Normal thought processes were observed. Medication side effects were repeatedly denied as documented in the medical evidence. Cardiac issues have been addressed (Exhibit 2F, 4F, 5F, 6F, 9F, 10F, 19F, and 20F). The claimant is able to perform light housework, cook, drive, water aerobics, and walk over a mile daily (Testimony and Exhibit 18F). Given the objective medical evidence in the record, I find that the claimant's residual functional capacity is reasonable, and that the claimant could function within those limitations without experiencing significant exacerbation of her symptoms.

(Tr. 26-27).

An MRI from June of 2012 revealed a mild disc bulge with minimal central canal stenosis and foraminal encroachment at L1-2; mild disc space narrowing with central annular tear and mild broad-based disc bulge, mild facet hypertrophic and degenerative changes, and mild central canal stenosis and foraminal encroachment at L3-4; moderate disc space narrowing with ventral ridging disc osteopyhte complex, central 3mm disc protrusion indenting the anterior thecal sac, mild central canal stenosis and mild foraminal encroachment at L4-5; mild bilateral facet hypertrophic and degenerative changes resulting in bilateral foraminal encroachment at L5-S1. (Tr. 266).

In July of 2012, Dr. William C. Clark examined Claimant. Upon

examination, she appeared comfortable, displayed a flattened affect and appeared in mild distress. She transitioned from sitting to standing with mild difficulty. She waled about the room with a slightly, left-sided antalgic gait. She had no difficulty going up on her heels or toes. She stood in a normal station. Inspection of her spine revealed no asymmetry or palpable step-off. She was tender to palpation over the lower portion of the lumbar spinous processwith with left-sided paraspinous guarding appreciated. Forward flexion and extension did accentuate Claimant's pain. Lower extremity strength was normal. Dr. Clark concluded she had degenerative changes at L4-5 and L5-S1 with associated left leg radiculopathy. (Tr. 277-78).

In March of 2013, Claimant was able to walk with a normal gait and could stand on heels and toes without difficulty. Straight leg raising bilaterally 90 degrees caused no problems. (Tr. 292).

In April of 2013, Claimant demonstrated that she was able to ambulate with minimal assistance. Strength was grossly normal in all extremities. (Tr. 283). Also in April of 2013, Claimant was evaluated at Tulsa Pain Consultants. Claimant reported consistently with her testimony as to the pain she experienced. (Tr. 304). Upon examination, Claimant was found to be alert, awake, oriented x 3, and with no cognitive impairment. She was able to stand from a seated position without difficulty. She walked without any

assistive devices. Claimant had palpable tenderness over her left and right bilateral S1 joint over the sciatic and paralumbar region. (Tr. 305).

In January of 2014, Claimant underwent a mental status evaluation by Dr. Denise LaGrand. Dr. LaGrand noted Claimant "did not have any noticeable physical handicaps." Her posture and gait were normal. (Tr. 686).

In October of 2014, Claimant was found to have normal strength and tone, normal symmetric reflexes, and normal coordination and gait. She was also assessed with non-specific acute low back pain. (Tr. 848, 851).

In evaluations at Advanced Pain Specialists in October, November, and December of 2014 as well as January, February, April, and May of 2015, Claimant was consistently found to have normal gait, stance, and swing phase. (Tr. 742, 745, 748, 751, 754, 757, 884). In December of 2014, Claimant was found to have decreased range of motion in her lower extremities with normal motor strength and no gross abnormalities. She also exhibited limited extension and flexion with decreased range of motion of the head/neck. (Tr. 751).

Claimant contends the ALJ failed to recognize her side effects with medication. The record indicates Claimant denied such side effects on occasion. (Tr. 283, 741, 744, 747, 750, 756, 883).

Claimant appears to attribute every negative reaction that she might have suffered to her medication.  The record does not support such a conclusion.

Claimant also asserts that the ALJ ignored the negative findings during examinations while concluding the results were largely normal.  She also contends her heart condition, blood pressure, and pain medication cause her problems. Clearly, Claimant suffers from several impairments and conditions which affect her ability to move and function.  The question is not whether these conditions exist or cause Claimant problems but whether they are debilitating to the extent of precluding her from engaging in basic work activities.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.    Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that

precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ relied upon substantial evidence to support inconsistencies between the extreme limitation in functioning alleged by Claimant and Claimant's activities and the extent of her treatment. Consequently, this Court finds that the ALJ's findings on credibility are affirmatively linked to the

objective record and are supported by substantial evidence.

Claimant also references a third party letter from Claimant's former employer, Roland Construction Co., Inc., from June of 2015 which indicated problems posed by Claimant's medical conditions at work. (Tr. 235). The ALJ discussed the letter, giving it "some but not great weight". He found it was a lay opinion based upon casual observation, was possibly influenced by friendship, and directly contradicted medical evidence indicating Claimant's repeated denials of side effects from her medications. (Tr. 26). As a lay opinion, the ALJ was not required to weight the statement. Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996). He must consider the statement under the regulations. Soc. Sec. R. 06-3p. While the finding that the statement was possibly influenced by loyalty or friendship represents impermissible speculation, the remainder of the bases for rejecting the letter was supported by the regulations. No error is attributed to the manner in which the ALJ considered and limited the weight of the letter in his decision.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration

should be **AFFIRMED**.  The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of July, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE